Good morning, Your Honor. Frank Sperl is appearing for the petitioner. This is a very uncomplicated and narrow issue, but... Can you get closer to the microphone? Yeah, you have to get closer, then it helps. Thank you. How am I doing? Is that better, Judge Collins? Yes, thank you. Okay, thank you. Again, to repeat, this is a very narrow and uncomplicated issue, but of course it has existential implications for the petitioner. And I have one, I noticed a factual issue that I didn't raise in the brief and neither did the government, but it might actually be dispositive. Is it okay for me to address that? It's kind of interesting. Maybe. Okay. But it may be that I'll have to say I never heard it. I know. I mean, we generally keep to the record. I fully understand that, and if I could maybe do a letter brief afterwards. But on page 71 of the certified administrative record, there's the hearing notice, which is generated in October. A month later, she files a change of address. Now, it's kind of superfluous because it's the same address she always had. However, if she received notice, why would she file a change of address? I think it's circumstantially compelling that she never got it, which, of course, is the issue. But it's not in the record? I mean, it's not. This anomaly between her asking for a change of address after the government already sent out the hearing notice to that very address. Well, I'll let the government respond, but if it's not in the record, the record's what we have. Right. Yeah. I mean, it's in the record, but it wasn't pointed out. And again, that's a shame on me. So, Counsel, the rescheduling order is issued, is the one issued October 22nd. Is that correct?  Okay. And is the address that's on there, is that address correct?  Absolutely. Now, do we know that that is the address that the envelope had? Did this have a glassine window so that that's the address that the mailman would have seen? Right. Two things. I don't know that because the record doesn't have a copy of the envelope. But that's the address that she gave to the officers in Texas. And then for whatever reason, she filed a change of address one month after the hearing notice for that address. It was the same address, but it shows some diligence on her part. You know, why is she sending a change of address if she's somehow not interested in conforming to the dictates of the court? But maybe I can do a letter brief afterwards just to point that out. I just think it's rather compelling that why would you send a change of address if you'd already been served? If it was sent a month before she was served, her argument, of course, is that she was never served. But anyway, sorry to muddy the waters. Let me get to the... Well, since you're going off, I'm going to go off, too. So, you know, one of the things that we often do as we peek under the covers is does she have a... What claims does she have? Does she have... And I'm going to ask the government this because sometimes you can stand on your head and do everything, and a person actually doesn't have a meritorious claim. Right. Well, number one, we never quite got there. Unless the case was reopened, there really wasn't any reason to put together the claim. But my understanding is that she was fleeing an abusive relationship. So I think it is a real claim. We never got there, of course, because we never got the case open so we could file the asylum application. Well, my experience with the government right now is a lot of times if they think someone has a meritorious claim, a lot of times they're asking the court either for administrative closure or mediation or things along those lines, and the government hasn't done that. To their credit. But, again, because this is a little different. In those contexts of the administrative closure and all that, you're in proceedings. There was an order. And so they haven't been quite that generous where they would close before it was opened. Did you ever dispute that petitioners were given constructive notice? Because I can't find that in your brief. Constructive notice by? Well, that's the address that they had. Right. Our position is that this is the BIA's own law and inflexible and rigid application of the presumption of delivery is not appropriate. Well, I guess it's your argument that petitioners were not given constructive notice of the change of hearing date, or is your argument instead that the IJ should have found that petitioners overcame the presumption of effective delivery? I'm not really sure what your argument is. Well, our argument is that there was no delivery. And without, when it's regular mail, there is no presumption. And she put forth a number of factors that are set out in matter of MRA that circumstantially, you know, compel the conclusion that they didn't get. Right? She filed her motion and reopened. Well, it obviously didn't compel it with the IJ. The IJ found it. I think there was some language to the effect of the IJ found it suspicious or something. Right. That she got certain things and then didn't get, and then she got the notice of removal. Right. And then immediately came in. To her credit, in her guileless, you know, unsophisticated motion, she admitted that she received the order, and, but she didn't get that particular notice. I mean, you know, it's not the infallibility of the post office, right? I mean, she. Well, I guess, but I guess what you're saying, if she admits that she got that one there, you're, you seem to be making the argument that it necessarily follows that she must not have gotten the other one because we know how she acted. That's what you were asking the IJ to believe, but the IJ didn't have to accept that. Because a lot of times people don't respond to the first notice, and then the second notice when something happens, when you get sent to the collector, you know, they keep sending you, they make a pink notice or red notice or whatever, and then when you finally get sent to bill collection, then you do something. That doesn't mean you didn't get the other ones necessarily. It means now you know, uh-oh, doomsday. Sure. However, I mean, this is a little different than that. This is literally, you know, an order of deportation to be sent back to a dystopian third world country where you were abused by your boyfriend. So, I mean, it's a little more serious. And what she did are the basic things that MRA say, number one, she talked about due diligence. She filed it seven days after she got it. Just so that I'm clear about the legal standard that you're advocating for. Your position is that the statute, the reopening statute and the burden you had to carry relates to the issue of actual notice and that she had to, the notice had to actually show up at the house so that if she showed or indicated that, you know, it was gone awry and the postman maybe lost it, but it didn't arrive at the house, that that's sufficient for reopening. Is that, am I understanding your position correctly? You're encapsulating matter of MRA. That's exactly what it says. There's no presumption of delivery when it's regular mail. And if the appellant does certain things, like files a motion to reopen seven days later, she marches into court. She's recently in the United States and she goes into the immigration court asking to reopen and she somehow found out how to do it. I mean, the other scenario is that she absolutely received notice and then she brazenly walks into the courtroom and commits fraud on the court. There's no reason to think that this level of audacity. Well, it's okay, but when you're talking to judges, it's not like that's never happened. Okay? You can say there's no reason and you can argue all of those things, but it's not an actual impossibility because every judge has heard, had been lied to. Right. See, she wasn't going to a judge, right? She just went to the building itself and said, I got this notice. What do I do? And they told her, you know, you have to file a motion to reopen. So she wasn't talking to a judge. She was talking to a clerk. Well, but she went to the immigrant. She asked that. She said the reason that — I mean, it really boils down to whether you believe her or not in front of the I.J. Right. Well, she never really — well, that's a problem. She was never before an I.J. I mean, she didn't go — same claim, she didn't get served. And then she went to the court knowing that, you know, who knows, she would be arrested, but yet she still did it. So she never saw a judge. And then she did a crude, guileless, unsophisticated motion to reopen. So she never saw a judge. So for her, you know, this is a level of audacity and mendacity — forgive the rhyming — that she would, you know, walk into the immigration court knowing she has an order of deportation and committing a massive fraud on the court. I mean, there's no reason to ascribe this level of turpitude to this guileless, unsophisticated person. I think the record is much more likely that she was blindsided. She immediately went to court and immediately filed her motion. And so I think, you know, doubts and ambiguities should be resolved in favor of a person like this, and cases should be decided on the merits. And I think her actions are very much congruent with the standard in matter of MRA. And then finally, the Salter case. I don't have too much time, but, you know, she didn't, like, appear before. But she was on a collision course to immigration proceedings, and that's what she wanted. I mean, she was 32 years old. She was with a 15-year-old child, and she was eight months pregnant. I don't think she thought she was going to be outrunning any Border Patrol agents. She knew she was going to be in court, and that's what she wanted. So the idea that she would just blithely engage in self-sabotage of the highest order I think is unlikely, and we would ask the matter be submitted. I only have 30 seconds left. All right. You have a little bit of time left. I'll give you a minute for rebuttal. Okay. Thank you. Thank you. All right. We'll hear from the government. Good morning, Your Honor. Good morning. May it please the Court. Yes, say your name, and then I have a question for you. We're going to jump right in. We only have 10 minutes. Can you explain the distinction between constructive notice and the presumption of effective delivery to me? And if they are distinct concepts, are you arguing that each of them is an independent ground for supporting the agency's decision, or what's your position here? Our position is there is a presumption of delivery when it comes to regular mail. It is a regular presumption. It is a weaker presumption than it would be if the notice of hearing had been sent by certified mail, but there is a weaker presumption if the mailing was sent by regular mail. That is one concept. The question goes to what's the legal standard. I mean, we have a question about whether the IJ made the statement of facts, but let me just clarify the facts by asking a hypothetical so I know what the legal standard is. Suppose the service properly addresses it to the correct address, which he has correctly given. It goes to the post office, and the postman that day, you know, mail falls out of the truck and it goes down the sewer, and the letter does not arrive at the house. Is it your position that that counts as constructive notice, even though we know there was an actual notice and she may be ordered deported in absentia? Is that your position? If we have evidence to indicate that the letter was not properly mailed and delivered, then there is no presumption of delivery. But I thought you were going on the fact that it's appropriately left in the post office box. Service is complete on mailing. I've correctly addressed it. I've put it in and it does not arrive at the house, presumably because of an error on the part of the postal service. Is it your position that under the doctrine of constructive notice, you can enter in an abstention order in those circumstances? Those are the facts. No, Your Honor, because if those are the facts, then the evidence would not show that it was properly addressed and mailed. OK, so then the government agrees that in order to satisfy the statute, there must be actual receipt at the house of the letter. And there needs to then be a determination by the IJ whether the letter showed up at the house. No, no. I know you're telling me two things I can't put together. So explain that. I'm sorry, Your Honor. Our position is a properly addressed and mailed notice of hearing is presumed delivered. That is our position based on the decisions of this court. Whether the issue of actual notice, the statute doesn't address actual notice. The statute just says if it's mailed, if it's sent by regular mail, there is and is properly addressed. There is a presumption of delivery. The idea of constructive notice or when an individual can be charged with notice is when there are. When it is properly addressed, it is presumed from the course of business, there is if there is evidence, if there is no evidence that there is no irregularity in the part of the government, then it will be presumed that the letter arrived at the destination at the regular time and received by the person that it is addressed. Counsel, that just allows you to conduct the hearing in absentia. That is all that the IJ has to know is that DHS is representing that it was properly addressed and that it was placed in the box. The person is not there. That allows you to do that in absentia. Now, that's because the IJ has no other information in front of him. But in this case, we do on a motion to reopen. We have evidence from the putative recipient that she did not receive it. She admits she received other mail at the house. She's not contesting that she's not getting anything from them. They've got the correct address. But for whatever reason, this one didn't come in. She has come in promptly and said, I didn't get this one. And as soon as you told me that I had been tried in absentia, I came in to say what's going on. How come I didn't have a hearing? So why doesn't that rebut the presumption of effective delivery? Your Honor, in this case, the agency did consider the circumstances and the evidence. Pursuant to SALTA and decisions of this court, the agency considered the circumstances of the case and the evidence to determine that petitioners did not adequately did not claim. What more did she need to do? She could, like other cases that this court has ruled on, there could have been an affirmative application for relief. There could have been another affidavit from her daughter indicating that we didn't we were at this address. We did not receive this address. In the I-213, she provided a point of contact with a phone number at that same address. There could have been another affidavit providing that. Can you point me to where in the IJ ruling I can find the actual finding that the letter arrived at the house? That is — Counsel, I'm looking at page 2 of the IJ's order. And the IJ notes in that first full paragraph, Did the IJ find that she was inherently unbelievable? No, Your Honor. Then I'm a little confused. It's followed by a however. She may be charged with receiving constructive notice when the hearing notice was sent to the address she last provided. But that's a very different argument. That's an argument that as long as you put it in the box, she's got notice whether or not she received it. That doesn't feel like the right rule. The IJ in this case reasonably concluded that — reasonably determined that the petitioner's statement in her motion was true. However, the IJ considered the circumstances and the other evidence presented in the record and accorded that evidence more weight than petitioner's statement that she did not receive the notice. Well, the IJ said, I think, quote, Questioned the petitioner's current contention of non-receipt, unquote. But that is somewhat ambiguous as to whether the IJ actually made a factual finding that the presumption of delivery had not been rebutted. So if the IJ had said, I don't believe it's been rebutted, I don't believe that based on everything that is here, that would be a cleaner case for you, wouldn't it? Yes, it would be, Your Honor. In this case, the IJ was — but in this case, the IJ understood that petitioner was pro se and this was a pro se motion. And so the IJ went and examined the motions and the language in the petitioner's motion and tried to do her best to resolve the petitioner's motion to reopen. The IJ went so far as to address the exceptional circumstances because petitioners had made a statement that — I have two problems with this. One is I don't see a clear finding that the letter arrived at the House. Indeed, I see comments that suggest that the IJ was not avoiding making a finding that the letter arrived at the House. And I also see comments in the IJ's ruling that says that the correct rule of law is that it doesn't matter whether it arrived at the House, which doesn't seem to me to be a correct rule. So I don't see how this can be salvaged. And the BIA tried to interpolate a factual finding that's not there, which, of course, it can't do. But can you help me out with this problem? Because that's — I'm stuck with these two problems with the IJ's ruling. There is — when it comes to immigration court, there is sometimes uncertainty when it comes to records of proceedings and how the case evolved. In this case, there is — when an IJ — when the agency is looking at whether there was — there was — excuse me. The IJ — in making their determination, the agency considers the circumstances of the case and the evidence presented. So the IJ here — the agency in this case considered all the circumstances in this case. And the circumstances include that there is in the record a properly addressed notice of hearing. There is no indication that it was undelivered. Other circumstances indicate that that was addressed. Well, there is circumstances it was undelivered. I mean, there's her testimony that it didn't show up. There is that — there is her statement. There is her statement that she did not receive it. But there's other circumstantial evidence that indicates other mailing, like it was correctly addressed. That was the address that she gave to DHS. That was the address that she provided in the updated change of address form. That was the address that was provided in the NTA and the removal order. There were other circumstances to indicate that this notice of hearing went through the proper procedure and was entitled to a presumption of regularity and was able to — I see that my time is up. Counsel, I've got a question for you. Okay. On page 71 of the record is the October 22nd notice. This is the question I asked to Mr. Sprouls. And Mr. Sprouls has said that the two — the address on there is correct. That is her correct address. Now, was this sent in an envelope with a glassine, a transparent label over this, so that this is the address that the postman would see? Or did the address have to be typed separately on an envelope? This would be the — my understanding of immigration court procedures, having worked at an immigration court, is that the notice of hearing would have been included in an envelope. That would be the address, the envelope, that depending on the court — some courts, they do have an envelope where you have to — the clerk's office has to print out the address. Others, they do have the clear — I'm sorry, the clear — the clear — Which was it here? We don't know because there was no undeliverable, no envelope returned to the clerk's office. Yeah, but we didn't have anybody who came in from the office to say, this is the way we do things. It was — it would have been a transparent window on the front of it, so that this is the address that the mailman would have seen, as opposed to somebody coming in and saying, well, we always type the same address that's on the notice on the outside of the envelope, and then we would have a question, of course, as to whether it was transcribed correctly. That's — we don't have that information, Your Honor. And that's — without the return — without an envelope, without the return envelope, this case is distinguishable from other cases where the court was unable to read the return envelope. The court could see that the zip code was incorrect. The court — we don't have that situation here. We only have one copy of the notice of hearing, and it is — this is the copy that the court kept, and not the copy — not any copy was returned to the court as undeliverable. I just have one more factual question, and that is, one of the odd features of this case, and it may be the only circumstance in which this odd fact pattern can arise, is the notice of change of hearing date advanced the hearing date, as opposed to postponed it out, which is very unusual. Usually, they get delayed, and there's a notice pushing it out. But this one advanced it from February to December. Is that usual? Your Honor, it is not unusual. The statute permits that for any change or — for any change. The statute language is any change or postponement in time and proceedings. The petitioner, Shelby, provided a written notice. It is immigration court procedure. Sometimes they are able to move the hearing up. Sometimes they are able to postpone it based on their docket. We don't — the record does not tell why this case. Breyer. The reason that Judge Collins' question is so good is that if the hearing had been postponed and she didn't receive the notice of the postponed hearing, she could be faulted if she didn't show up at the original date on the hearing, for which her name would no longer appear on the master calendar. But it would have been another way for her to have been advised that her hearing had been postponed. When you advance the date and she says, I didn't get the notice, she's end played. And with your — with the service's presumption here of effective — of actual delivery, then she's got — she's got no way of getting around this because she admits that she's received other notices, including the one that told her she was tried in absentia, after which she comes rushing into the court to try to get it corrected. She's got no way to win under the — under the — under the service's theory here. Your Honor, there are — because of the — because this case — because these cases are based on the circumstances and the evidence — and the evidence presented, she could have — there could have been other circumstances or other evidence she could have presented to — Well, you told — you told me that she could have her daughter. I have no idea how old her daughter is, but let's suppose that she's a teenager. I mean, this would nearly be hearsay because she would come in and say, we didn't receive this envelope because my mother told me we didn't receive the envelope, and then it would be excluded. But I don't know what — I don't know what else she can do. She didn't put it under oath, but she was also pro se. Right. Probably didn't know that she needed to put it under oath. So — And there were — no, she did not. But I would like to address the — the claim part as well. She could have — there could have been an application for relief filed, something — other — other evidence that this — other evidence to indicate that she could rebut that presumption. And Judge Callahan, you had asked about her claim previously. And aside from her statement in her motion that she did not — she feared returning to her home country, we also have a statement in her I-213 indicating that she did not have a fear of returning to her own — to her home country. The statement that counsel provided today that she fears — she is fleeing an abusive relationship, that's not in the record. That was not presented to the government at any point. We, in discussing this case and reviewing this case with a briefing attorney, we were unable to determine what her claim would be, what other circumstances or evidence that she could present to rebut the presumption. And there was — we could not — the record was unclear about what claim for relief that she had. So that was another circumstance, another piece of evidence that this court — Did the IJ make findings on that? No, Your Honor. Okay. So that wasn't a basis for the IJ or the BIA's decision? No, that was a — no. So if you knew something about what her claim was and you thought that she had a meritorious claim, would that affect how you would evaluate this? It would — it would have affected — it would — based on — it would — I can't speak for the briefing attorney, but it would — it would be something that the government would consider. It would be something that — based on the case law of this court, on these cases, when a petitioner, when a non-citizen has filed an application for relief, when they have even — that has — that has been a circumstance that this court has considered along with other evidence that — to determine that a petitioner has rebutted the presumption. And the agency has done that in other cases as well, so. But right now, you have no indication that — of the — whether she has a meritorious claim or not? We do not. In fact, what you're saying, originally what she said does not indicate the same as what counsel is saying here. The record is ambiguous. That is our position. The record is unclear what her claim is because her — her pro se motion says that she has a fear, but then when she entered the United States, she told DHS that she did not claim a fear of torture or persecution. The — our position is the record is unclear what her claim is. Okay. Thank you. All right. I'll give you two minutes. Very quickly. I mean, in terms of the application for relief, you know, she's pro se. When you file an — when you're in court, the judge has to give you a date and, you know, supporting materials. So the idea that she was pro se, had never actually appeared before the judge, but should have filed an asylum application all on her own is asking a little bit much of this guileless, unsophisticated pro se applicant. So I don't think that's really dispositive, right? I mean, when you have an in absentia order, that's part of the problem. You never had a chance to pursue your claim. Now, in terms of this delivery and evidence, right, the negligent mailman, there will never be evidence, right? So that's why a matter of MRA says there will never be, unless there's a CCT camera showing the mailman not dropping it off, then you have about seven different factors that they talk about to demonstrate the veracity of your claim that you never got it.  And again, in this case, you know, seven days. And two, the idea that she would — again, she submitted a change of address. It turns out she didn't need to. It was the same address she already had. But why would you do that if your plan was just to, you know, flout the order of the court and disappear into the maw of the 11 million undocumented? She obviously was trying to pursue her claim. So, I mean, I think to me there's two scenarios, right? Our scenario, she was blindsided. She did everything she could. The other is she absolutely got it. Marched into court and perpetrated fraud on the court. I think there's no reason to think that this woman did that. So I think if you have to choose the two, we would ask you to choose our scenario, that she simply didn't get it. And, again, when it's regular mail, there will never be evidence of non-delivery, so it has to be circumstantial evidence that we believe she presented on her own. Right? I mean, I didn't represent her on the motion to reopen, so she did it all on her own. She did a pretty good job, except she lost. But, anyway, we would submit the matter. Again, I think cases should be heard on the merits. It's a close call, and I think in terms of the presumption of delivery, she rebutted it. And we would ask you to grant the petition. Thank you both for your argument. This matter will stand submitted.
judges: BYBEE, CALLAHAN, COLLINS